ROSNER, BARRY & BABBITT, LLP
Hallen D. Rosner, SBN: 109740
David L. Herman, SBN: 216469
10085 Carroll Canyon Road, Suite 100
San Diego, CA 92131
Telephone: (858) 348-1005
Facsimile: (858) 348-1150
*hal@rbblawgroup.com*
*david@rbblawgroup.com*

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SONJA CHINN, an individual,

Plaintiff,

v.

CARMAX AUTO SUPERSTORES CALIFORNIA, LLC, a Virginia limited liability company; and DOES 1 through 10, inclusive,

Defendants.

Case No.

Complaint for:

1. Violation of the Consumers Legal Remedies Act, Civil Code § 1750 *et seq*.
2. Violation of the Song-Beverly Consumer Warranty Act, Civil Code § 1790 *et seq*.
3. Violation of the Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq*.
4. Fraud and Deceit
5. Negligent Misrepresentation
6. Breach of Contract

JURY TRIAL REQUESTED

Plaintiff, Sonja Chinn, alleges the following against Defendant CarMax Auto Superstores California, LLC ("CarMax"), on information and belief formed after a reasonable inquiry under the circumstances:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because Plaintiff is a natural person with a claim that exceeds the amount in

///

controversy of $75,000 and Plaintiff and Defendant CarMax have diversity of citizenship.

2. This Court has supplemental jurisdiction over the California state law claims, pursuant to 28 U.S.C. § 1367. Venue is appropriate in this judicial district because the Defendants are individuals, associations, or corporations that are either authorized to conduct or, in fact, do conduct substantial business in the State of California, County of Los Angeles.

## GENERAL ALLEGATIONS

3. Plaintiff, Sonja Chinn, is an individual who resided in the city of Los Angeles, County of Los Angeles, State of California, at the time the contract that is the subject of this lawsuit was entered into.

4. Defendant, CarMax Auto Superstores California, LLC, ("CarMax" or "the dealership") is or was a Virginia limited liability company, registered to do business as a car dealership in the State of California, and doing business in the City of Inglewood, County of Los Angeles, State of California.

5. Plaintiff does not know the true names and capacities, whether corporate, partnership, associate, individual or otherwise, of Defendants sued herein as Does 1 through 75, inclusive, and thus names them under the provisions of Section 474 of the California Code of Civil Procedure. Defendants Does 1 through 75, inclusive, are in some manner responsible for the acts, occurrences and transactions set forth herein, and are legally liable to Plaintiff and/or they are the alter-ego of the Defendants named herein. Plaintiff will set forth the true names and capacities of the fictitiously named Defendants together with appropriate charging allegations when ascertained.

6. Plaintiff does not know the true names and capacities, whether corporate, partnership, associate, individual or otherwise, of Defendants sued herein as Does 1 through 75, inclusive, and thus names them under the provisions of Section 474 of the California Code of Civil Procedure. Defendants Does 1 through 75, inclusive, are in some manner responsible for the acts, occurrences and transactions set forth herein,

and are legally liable to Plaintiff and/or they are the alter-ego of the Defendants named herein. Plaintiff will set forth the true names and capacities of the fictitiously named Defendants together with appropriate charging allegations when ascertained.

7. All acts of CarMax's employees as hereinafter alleged were authorized or ratified by the owner or managing agents of CarMax.

## SUMMARY OF FACTS

8. On November 7, 2013, Plaintiff purchased a 2010 Dodge Journey, VIN: 3D4PG5FV1AT179151 ("the Vehicle"), from CarMax in Inglewood, California.

9. At the time of purchase, Plaintiff was, and is, a "disabled person" within the meaning of California Civil Code section 1761(g).

10. CarMax advertised and sold the Vehicle to Plaintiff as "certified." Prior to CarMax selling the Vehicle to Plaintiff, CarMax did not provide Plaintiff with a completed inspection report that indicated all components inspected on the Vehicle. Plaintiff would not have purchased the Vehicle if was not certified.

11. California regulates the use of the word "Certified" when used in the advertisement or sale of a used vehicle. A dealer cannot "advertise for sale or sell a used vehicle as 'certified' or use any similar descriptive term...that implies the vehicle has been certified to meet the terms of a used vehicle certification program" if the dealer does not comply with the requirements set forth in California Vehicle Code Section 11713.18. Vehicle Code section 11713.18(a)(6) states that it is a violation of California law if "Prior to sale, the dealer fails to provide the buyer with a completed inspection report indicating all the components inspected." Vehicle Code section 11713.18(a)(9) states that it is a violation of California law if "The term "certified" or any similar descriptive term is used in any manner that is untrue or misleading or that would cause any advertisement to be in violation of subdivision (a) of Section 11713 of this code or Section 17200 or 17500 of the Business and Professions Code." Vehicle Code section 11713.18(b) states that "A violation of this section is actionable under the [Consumers Legal Remedies Act ("CLRA"), California Civil Code Section

1750 et seq.], [and] the [Unfair Competition Law ("UCL"), Cal. Bus. and Prof. Code Section 17200 et seq.]. . ." (Cal. Veh. Code Section 11713.18(b).)

12. Before purchasing the Vehicle from CarMax, Plaintiff saw CarMax's advertisements stating CarMax sold certified vehicles. Plaintiff saw and heard these advertisements in the weeks preceding Plaintiff's purchase of the Vehicle.

13. When Plaintiff went to the CarMax dealership in Costa Mesa, the CarMax saleswoman informed her that CarMax inspects every vehicle it sells "rigorously" and that every vehicle goes through a 125 point inspection, and also stated that every vehicle is "certified."

14. Plaintiff asked the CarMax saleswoman specifically about the Vehicle's transmission, starter, engine, and brakes. The CarMax saleswoman reiterated her previous statements that the Vehicle had been inspected and that CarMax sold only vehicles that are in "perfect running condition," and that CarMax had a full-service repair center that can take care of Plaintiff if anything went wrong with the Vehicle.

15. Plaintiff relied upon these representations and proceeded to identify and purchase the Vehicle.

16. CarMax provided Plaintiff with an express 30-day warranty, as well as an implied warranty of merchantability.

17. At no point prior to completing the purchase contract did CarMax provide Plaintiff with a completed inspection report, as mandated by Vehicle Code § 11713.18. CarMax did provide Plaintiff with a generic advertisement that CarMax had performed a "rigorous CarMax 125-point Quality Inspection." This generic advertisement is not specific to the Vehicle, and was not provided in hardcopy form to Plaintiff until after she signed the sales contract.

18. On November 11, 2013, four days after purchase, Plaintiff returned the Vehicle to CarMax because the Vehicle made an unusual ticking sound when started and had problems with the air conditioner. CarMax replaced the Vehicle's actuator, but did not address the startup problems.

19. Plaintiff brought the Vehicle to CarMax on December 4, 2013 because of brake problems and the transmission making a grinding noise. CarMax verified the problem with the transmission, but did not perform the repairs and instead sent the Vehicle to a Dodge dealership for repairs. This was contrary to CarMax's express assertion at the time of sale that CarMax had a full-service repair facility that could fix any problems Plaintiff had with the Vehicle.

20. In early May 2014, Plaintiff brought the Vehicle to CarMax for repair of the air conditioner, which was originally repaired pursuant to CarMax's warranty. CarMax told Plaintiff that it would not repair the Vehicle and that she would have to take the Vehicle to a Dodge dealership. Plaintiff then took the Vehicle to Hooman Chrysler Dodge in Inglewood on May 14, 2014 for repairs.

21. In early January 2015, Plaintiff brought the Vehicle to CarMax for repairs of the air conditioning, starting problems, and suspension. CarMax again told Plaintiff that it was not equipped to perform the repairs, which caused Plaintiff to take the Vehicle to Hooman Chrysler Dodge on January 14, 2015.

22. In early March 2015, Plaintiff brought the Vehicle to CarMax for repairs of the starting problems, and suspension and fluid leaks. CarMax again told Plaintiff that it was not equipped to perform the repairs, which caused Plaintiff to take the Vehicle to Hooman Chrysler Dodge again.

23. The mechanical problems that Plaintiff has repeatedly reported to CarMax remain unresolved.

24. Plaintiff made a request to CarMax that it repurchase the Vehicle. The CarMax service manager told Plaintiff that CarMax would not repurchase any vehicles after 30 days from purchase. Instead, the service manager offered to let Plaintiff trade in the Vehicle for a different CarMax vehicle. As a result, Plaintiff retained counsel.

25. On April 15, 2015, Plaintiff's counsel sent a certified letter to CarMax to provide notice of her claims under the Consumers Legal Remedies Act ("CLRA").

///

CarMax responded on April 28, 2015 rejecting all claims and refusing to provide a correction.

26. On October 20, 2016, the United States Court of Appeal for the Ninth Circuit in *Gonzales v. CarMax Auto Superstores, LLC*, 2016 WL 6122776 (9th Cir., Oct. 20, 2016, No. 14-56305), ruled that CarMax's generic pre-printed list of vehicle parts, like the one furnished to Plaintiffs, did not comply with California Vehicle Code § 11713.18(a)(6) as a matter of law, and reversed the trial court's granting of summary judgment to CarMax and remanded with instructions to enter summary judgment for appellant Gonzales on his claims for violation of the Consumers Legal Remedies Act and Unfair Competition Law.

27. At the time Plaintiff purchased the Vehicle, she was told by CarMax that its vehicles were "certified" and was given CarMax's generic pre-printed advertisement that purported to list 125 different parts that were inspected. However, it was not until October 20, 2016 that CarMax's generic pre-printed "inspection" advertisement was found to be a violation of the California law governing the advertising and sale of "certified" vehicles.

28. Plaintiff remained unaware of CarMax's breach of the law regarding the advertising and sale of "certified" vehicles until she contacted an attorney well after the sale regarding the Vehicle's mechanical issues. The discovery of the illegal conduct was delayed, thereby tolling any statute of limitations.

## FIRST CAUSE OF ACTION

**Violation of the Consumers Legal Remedies Act**

**California Civil Code Section 1750, et seq.**

29. Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 28, inclusive, of this Complaint.

30. The Vehicle is a "good" bought for use primarily for personal, family or household purposes pursuant to Civil Code Section 1761(a).

///

31. CarMax is a "person" pursuant to California Civil Code Section 1761(c).

32. Plaintiff is a "consumer" pursuant to California Civil Code Section 1761(d).

33. Plaintiff is a "disabled person" pursuant to California Civil Code §1761(g).

34. The advertisement of the Vehicle to Plaintiff is a "transaction" pursuant to California Civil Code Section 1761(e).

35. The sale of the Vehicle to Plaintiff is a "transaction" pursuant to California Civil Code Section 1761(e).

36. The repairs of the Vehicle are a "service" pursuant to California Civil Code section 1761(b)

37. CarMax is a dealer licensed by the California Department of Motor Vehicles.

38. The California legislature has declared that a violation of any of the subparts of Vehicle Code Section 11713.18(a)(1)-(9) is actionable under the Consumers Legal Remedies Act ("CLRA").

39. Pursuant to the CLRA, the following unfair methods of competition and unfair or deceptive acts or practices are prohibited: (2) Misrepresenting the source, sponsorship, approval, or certification of goods; (3) Misrepresenting the affiliation, connection, or association with, or certification by, another; (5) Representing that goods have sponsorship, approval, or characteristics which they do not have; (7) Representing that goods are of a particular standard, quality or grade if they are of another; (9) Advertising goods or services with intent not to sell them as advertised; (14) Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; and (16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

///

40. CarMax violated the CLRA by:

a. Advertising the vehicle to Plaintiff as "certified" without providing Plaintiff, prior to sale, a completed inspection report indicating all the components CarMax inspected to meet the terms of CarMax's used vehicle certification program;

b. Selling the vehicle to Plaintiff as "certified" without providing Plaintiff, prior to sale, a completed inspection report indicating all the components CarMax inspected to meet the terms of CarMax's used vehicle certification program;

c. Labeling the vehicle as "certified" without providing Plaintiff, prior to sale, a completed inspection report indicating all the components CarMax inspected to meet the terms of CarMax's used vehicle certification program;

d. Selling an unmerchantable vehicle to Plaintiff;

e. Violating California Vehicle Code Section 11713.18(a)(6) and (9);

f. Selling a vehicle as "Certified" that is in need of substantial repair;

g. Misrepresenting the quality and condition of the Vehicle and failing to disclose the Vehicle's problem to Plaintiff;

h. Selling an unmerchantable vehicle that would not pass without objection in the trade;

i. Refusing on more than one occasion to repair the vehicle to conform to its express and implied warranties after having represented to Plaintiff, at the time of sale, that it had full-service repair facilities capable of making necessary repairs;

j. On information and belief, failing to maintain completed inspection reports for inspection and verification by the California Department of Motor Vehicles.

///

41. If CarMax had not advertised, sold, or labeled the Vehicle as "certified," Plaintiff would not have purchased the Vehicle from CarMax. Plaintiff was harmed and damaged by CarMax's representations, and as a result of CarMax's conduct, suffered substantial emotional and economic damage.

42. Plaintiff was induced to purchase a vehicle she otherwise would not have, or at a minimum paid less for, by use of the term "certified." Plaintiff was further induced to purchase the Vehicle based upon CarMax's false representations—or at best half-truths—about the Vehicle's condition.

43. Instead of the high-quality, "certified," and thoroughly inspected vehicle Plaintiff thought she was buying, CarMax sold Plaintiff a mechanically flawed vehicle and then refused to fix it when it inevitably broke down.

44. Concerted marketing of "Certified" pre-owned vehicles by auto manufacturers and dealers to consumers has created an association of high quality with the term "certified." Consequently, the "Certified" label itself has intrinsic perceived value, apart from the qualities of the vehicle itself. In other words, simply calling a vehicle "Certified" increases its value and consumers are charged a premium for allegedly certified vehicles. Significantly, the label induces many consumers, such as Plaintiff, to buy a vehicle they otherwise would not have or pay a higher price.

45. CarMax's actions are sufficient to support punitive damages. CarMax markets its cars as certified to increase car sales, to increase the perceived value of it vehicles, and to make increased profits from consumers, including Plaintiff. CarMax's policies regarding the use of the term "Certified" are instituted at the highest corporate levels, with full knowledge that its use of the term certified violates California law and defrauds and cheats California consumers.

46. CarMax, to make more money, intentionally undermined protections granted consumers by California law. CarMax's intentional acts harm consumers and create profit for CarMax because consumers, including Plaintiff, are denied information, and purchase vehicles that they would not otherwise purchase.

47. To satisfy the Preliminary Notice requirement of Civil Code Section 1782(a), Plaintiff mailed to CarMax a letter via certified mail, return receipt requested. The letter serves as notice to CarMax of its alleged violations of the CLRA. The letter demands CarMax correct the alleged violations of Civil Code Section 1770.

48. CarMax did not provide a remedy, repair or correction. Plaintiff hereby seeks all relief available under the CLRA including damages and punitive damages for CarMax's malicious, oppressive and/or fraudulent conduct.

49. Civil Code Section 1780(a)(2) of the CLRA provides that a consumer is entitled to an injunction prohibiting acts or practices which violate the CLRA. Plaintiff seeks an order enjoining CarMax from the acts, methods, and practices as set forth in this Complaint, as well as equitable relief.

50. Pursuant to California Civil Code Section 1780(d), Plaintiff may also recover attorney's fees and costs according to proof at time of trial.

51. California Civil Code § 1780(b) provides that a consumer who is a senior citizen or disabled person may seek and be awarded an additional amount of up to $5,000 for suffering substantial physical, emotional, or economic damage resulting from a defendant's unfair or deceptive practices. Plaintiff, as a disabled person, seeks an award under section 1780(b).

## SECOND CAUSE OF ACTION

### Violation of the Song-Beverly Consumer Warranty Act, Civil Code §1790 *et seq*.

52. Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 51, inclusive, of this Complaint.

53. Pursuant to the Song-Beverly Consumer Warranty Act ("Song-Beverly"), Civil Code §§1790 *et seq*., the Vehicle constitutes "consumer goods" purchased primarily for family or household purposes and Plaintiff has used the Vehicle primarily for those purposes.

54. Plaintiff is a "buyer" of consumer goods under Song-Beverly.

55. CarMax is a "retailer" or “seller” under Song-Beverly.

56. CarMax’s express warranty and implied warranty of merchantability accompanied the sale of the Vehicle to Plaintiff.

57. The Vehicle was delivered to Plaintiff with serious defects and nonconformities to warranty.

58. The foregoing defects and nonconformities to warranty manifested themselves within the applicable implied and express warranty periods. The nonconformities substantially impair the use, value and/or safety of the Vehicle.

59. Plaintiff delivered the Vehicle to CarMax for repair of the nonconformities on numerous occasions.

60. CarMax was unable to conform the Vehicle to the applicable express warranties after a reasonable number of attempts.

61. CarMax, on more than one occasion, refused to attempt repairs on the Vehicle to conform it to the applicable express warranties.

62. The failure and refusal to remedy these defects and nonconformities violated the express warranty provided to Plaintiff.

63. In order to meet the implied warranty of merchantability consumer goods must meet each of the following criteria: (1) Pass without objection in the trade under the contract description; (2) Be fit for the ordinary purposes for which such goods are used; (3) Be adequately contained, packaged and labeled; and (4) Conform to the promises or affirmations of fact made on the container or label.

64. The Vehicle would not pass without objection in the trade, thereby violating the implied warranty of merchantability.

65. Plaintiff is entitled to revoke, and justifiably revokes, acceptance of the Vehicle under Song-Beverly.

66. Plaintiff is entitled to and seeks damages and other legal and equitable relief, including, but not limited to, all incidental, consequential and general damages resulting from CarMax’s failure to comply with its obligations under Song-Beverly.

67. Plaintiff is entitled to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorneys' fees, reasonably incurred in connection with the commencement and prosecution of this action.

68. CarMax willfully violated Song-Beverly. As a result, Plaintiff is entitled to a civil penalty up to two times her actual damages.

**THIRD CAUSE OF ACTION**

**Violation of the Unfair Competition Law, Bus. & Prof. Code §17200, *et seq*.**

69. Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 68, inclusive, of this Complaint.

70. The California legislature has declared that a violation of any of the subparts of Vehicle Code Section 11713.18(a)(1)-(9) is actionable under the Unfair Competition Law, Business & Professions Code Section 17200, *et seq*.("UCL").

71. CarMax committed acts of unfair competition, as defined by the UCL. As set forth more fully above, CarMax has engaged in a course of conduct of systematically violating the consumer laws in this State prohibiting the commitment of deceptive practices, including the laws of fraud and deceit, and the various prohibitions contained in the California Vehicle Code and the Consumers Legal Remedies Act.

72. CarMax has engaged in "unlawful" business acts and/or practices by:

a. Advertising the vehicle to Plaintiff as "certified" without providing Plaintiff, prior to sale, a completed inspection report indicating all the components CarMax inspected to meet the terms of CarMax's used vehicle certification program;

b. Selling the vehicle to Plaintiff as "certified" without providing Plaintiff, prior to sale, a completed inspection report indicating all the components CarMax inspected to meet the terms of CarMax's used vehicle certification program;

///

c. Labeling the vehicle as "certified" without providing Plaintiff, prior to sale, a completed inspection report indicating all the components CarMax inspected to meet the terms of CarMax's used vehicle certification program;

d. Selling an unmerchantable vehicle to Plaintiff;

e. Violating California Vehicle Code Section 11713.18(a)(6) and (9);

f. Selling a vehicle as "Certified" that is in need of substantial repair;

g. Misrepresenting the quality and condition of the Vehicle and failing to disclose the Vehicle's problem to Plaintiff;

h. Selling an unmerchantable vehicle that would not pass without objection in the trade;

i. Refusing on more than one occasion to repair the vehicle to conform to its express and implied warranties after having represented to Plaintiff, at the time of sale, that it had full-service repair facilities capable of making necessary repairs;

j. On information and belief, failing to maintain completed inspection reports for inspection and verification by the California Department of Motor Vehicles.

73. The harm to Plaintiff outweighs the utility of CarMax's policies and practices, particularly considering the available alternatives, and that CarMax's policies and practices are immoral, unscrupulous, unethical and against public policy. CarMax's policies and practices consequently constitute an "unfair" business act or practice within the meaning of the UCL.

74. CarMax's deceptive policies and practices as set forth above also are likely to and/or have deceived Plaintiff. Thus, CarMax has also engaged in "fraudulent" business practices.

75. CarMax has engaged in, and continues to engage in, the same form of deceptive acts and practices.

76. CarMax's unlawful, unfair and fraudulent business practices present a continuing threat to Plaintiff and others in that CarMax will continue utilizing similar policies and practices.

77. The UCL provides that Plaintiff is entitled to an order enjoining CarMax from engaging in acts or practices that violate Business & Professions Code Section 17200. Plaintiff has lost money and suffered injury in fact as a result of CarMax's illegal conduct. Plaintiff seeks an order enjoining CarMax from engaging in the acts and practices set forth in this Complaint.

78. Plaintiff further seeks attorney's fees and costs pursuant to Code of Civil Procedure Section 1021.5.

## FOURTH CAUSE OF ACTION

### Fraud and Deceit

79. Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 78, inclusive, of this Complaint.

80. Prior to the sale of the Vehicle, at the time the Vehicle was sold to Plaintiff, and afterward, CarMax made misrepresentations to Plaintiffs as set forth above in Paragraphs 8 through 28.

81. Prior to the sale of the Vehicle, at the time the Vehicle was sold to Plaintiff, and afterward, CarMax omitted material facts from the statements it had made as set forth above in Paragraphs 8 through 28, the disclosure of which were necessary in order to make CarMax's other statements not misleading.

82. Specifically, CarMax:

a. Advertised the vehicle to Plaintiff as "certified" without providing Plaintiff, prior to sale, a completed inspection report indicating all the components CarMax inspected to meet the terms of CarMax's used vehicle certification program;

b. Sold the vehicle to Plaintiff as "certified" without providing Plaintiff, prior to sale, a completed inspection report indicating all

the components CarMax inspected to meet the terms of CarMax's used vehicle certification program;

c. Labeled the vehicle as "certified" without providing Plaintiff, prior to sale, a completed inspection report indicating all the components CarMax inspected to meet the terms of CarMax's used vehicle certification program;

d. Sold an unmerchantable vehicle to Plaintiff;

e. Violated California Vehicle Code Section 11713.18(a)(6) and (9);

f. Sold a vehicle as "Certified" that is in need of substantial repair;

g. Misrepresented the quality and condition of the Vehicle and failing to disclose the Vehicle's problem to Plaintiff;

h. Sold an unmerchantable vehicle that would not pass without objection in the trade;

i. Refused on more than one occasion to repair the vehicle to conform to its express and implied warranties after having represented to Plaintiff, at the time of sale, that it had full-service repair facilities capable of making necessary repairs;

j. On information and belief, failed to maintain completed inspection reports for inspection and verification by the California Department of Motor Vehicles.

83. The representations and omissions of material fact made by CarMax were not true.

84. Regardless of its actual belief, CarMax made the representations and omissions of material fact without any reasonable grounds for believing them to be true.

85. CarMax failed to exercise due care in ascertaining the accuracy of the representations or omissions of fact made to Plaintiff.

///

86. CarMax made the representations or omissions of fact for the purpose of inducing Plaintiff to rely upon them, and to act, or refrain from acting, in reliance thereon.

87. Plaintiff was unaware of the falsity of the representations or omissions and acted in reasonable reliance upon the truth of those representations and was justified in relying upon those representations.

88. As a direct and proximate result of CarMax's misrepresentations or omissions of material fact, Plaintiff suffered damages, including actual, consequential, and incidental damages, according to proof at trial.

89. Plaintiff hereby alleges material facts pertaining to the purchase of the Vehicle were misrepresented, and, therefore, she is entitled to rescission of the RISC and restitution in an amount according to proof at trial.

90. CarMax's conduct constitutes conduct that is oppressive, fraudulent, or malicious, also entitling Plaintiff to punitive damages under Civil Code §3294. The acts of CarMax's corporate employees as alleged were authorized or ratified by an officer, director, or managing agent of CarMax.

91. CarMax ratified the conduct of the dealership personnel.

## FIFTH CAUSE OF ACTION

### Negligent Misrepresentation

92. Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 91, inclusive, of this Complaint.

93. The representations made by CarMax were not true.

94. Regardless of its actual belief, CarMax made the representations without any reasonable grounds for believing them to be true.

95. CarMax failed to exercise due care in ascertaining the accuracy of the representations made to Plaintiff.

96. CarMax made these representations for the purpose of inducing Plaintiff to rely upon them, and to act, or refrain from acting in reliance thereon.

97. Plaintiff was unaware of the falsity of the representations and acted in reliance upon the truth of those representations and was justified in relying upon those representations.

98. As a direct and proximate result of the negligent misrepresentations of material fact by CarMax, Plaintiff has suffered damages, including all actual, consequential and incidental damages according to proof at trial.

99. Plaintiff hereby alleges fraud in the inducement to enter into the sales contract, and therefore are entitled to rescission of the sales contract and restitution in an amount according to proof at trial.

## SIXTH CAUSE OF ACTION

### Breach of Contract

100. Plaintiff incorporates by reference each and every allegation set forth in Paragraphs 1 through 99, inclusive, of this Complaint.

101. CarMax is a "dealer" and "retailer" within the terms of California Vehicle Code sections 285 and 373.

102. The provisions of the Vehicle Code are incorporated into every contract for the sale of a vehicle in the State of California.

103. Vehicle Code § 11614(a) provides it is unlawful for a lessor-retailer licensed in this state to "Make or disseminate, or cause to be made or disseminated, before the public in this state, in any newspaper or other publication, or any advertising device, or by oral representation, or in any manner or any means whatsoever, any statement that is untrue or misleading and that is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

104. Vehicle Code § 11713(a) provides it is unlawful for any licensed dealer to "Make or disseminate, or cause to be made or disseminated, before the public in this state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any manner or any means whatsoever, any

///

statement that is untrue or misleading and that is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

105. Vehicle Code section 11713.18(a)(6) states that it is a violation of California law if "Prior to sale, the dealer fails to provide the buyer with a completed inspection report indicating all the components inspected."

106. Vehicle Code section 11713.18(a)(9) states that it is a violation of California law if "The term "certified" or any similar descriptive term is used in any manner that is untrue or misleading or that would cause any advertisement to be in violation of subdivision (a) of Section 11713 of this code or Section 17200 or 17500 of the Business and Professions Code."

107. Vehicle Code section 11713.18(b) states that "A violation of this section is actionable under the [Consumers Legal Remedies Act ("CLRA"), Civil Code Section 1750 et seq.], [and] the [Unfair Competition Law ("UCL"), Bus. and Prof. Code Section 17200 et seq.]. . ." (Veh. Code Section 11713.18(b).)

108. CarMax violated the Vehicle Code and breached the RISC by:

a. Advertising the vehicle to Plaintiff as "certified" without providing Plaintiff, prior to sale, a completed inspection report indicating all the components CarMax inspected to meet the terms of CarMax's used vehicle certification program;

b. Selling the vehicle to Plaintiff as "certified" without providing Plaintiff, prior to sale, a completed inspection report indicating all the components CarMax inspected to meet the terms of CarMax's used vehicle certification program;

c. Labeling the vehicle as "certified" without providing Plaintiff, prior to sale, a completed inspection report indicating all the components CarMax inspected to meet the terms of CarMax's used vehicle certification program;

d. Selling an unmerchantable vehicle to Plaintiff;

e. Violating California Vehicle Code Section 11713.18(a)(6) and (9);

f. Selling a vehicle as "Certified" that is in need of substantial repair;

g. Misrepresenting the quality and condition of the Vehicle and failing to disclose the Vehicle's problem to Plaintiff;

h. Selling an unmerchantable vehicle that would not pass without objection in the trade;

i. Refusing on more than one occasion to repair the vehicle to conform to its express and implied warranties after having represented to Plaintiff, at the time of sale, that it had full-service repair facilities capable of making necessary repairs;

j. On information and belief, failing to maintain completed inspection reports for inspection and verification by the California Department of Motor Vehicles.

109. Failure to comply with the Vehicle Code renders a sale illegal and void. *Martinez v. Enterprise Rent-A-Car Company*, 119 Cal.App.4th 46, 49 (2009). These violations render the sale of the Vehicle unlawful and make CarMax liable for return of all monies paid for the Vehicle, incidentals and consequential damages, cancellation and rescission of the sale of the Vehicle, as well as attorneys' fees and costs.

110. Plaintiff is entitled to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorneys' fees, reasonably incurred in connection with the commencement and prosecution of this action. California Civil Code § 1717.

**WHEREFORE**, Plaintiff prays for judgment as follows:

1. For general damages according to proof at trial;
2. For rescission of the purchase contract;
3. For incidental and consequential damages according to proof at trial;
4. For punitive and statutory damages where available;

5. For the equitable and injunctive relief permitted under California Civil Code Section 1780 and California Business & Professions Code Section 17200;

6. For pre-judgment interest at the legal rate;

7. For reasonable attorney's fees and costs of suit as permitted by law (including, but not limited to, California Civil Code sections 1717, 1780(e), and 1794(d) and California Code of Civil Procedure section 1021.5);

8. Relief under California Business and Professions Code section 17200 as limited as provided by law;

9. For the additional award permitted under California Civil Code § 1780(b) for unfair or deceptive practices against Plaintiff, as a disabled person, that resulted in substantial physical, emotional, or economic damages; and

10. For such other and further relief as the Court deems just and proper under the circumstances.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demand a trial by jury as to all claims triable by jury.

Dated: November 22, 2016 ROSNER, BARRY & BABBITT, LLP

By: /s/ David L. Herman
Hallen D. Rosner
David L. Herman
Attorneys for Plaintiff